UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID THOMPSON,

        Plaintiff,

vs.

CORRECTIONAL MEDICAL
SERVICES, INCORPORATED, *et al.,*

        Defendants.

_____/

Case No. 09-14483

Paul D. Borman
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

## REPORT AND RECOMMENDATION
## MOTION FOR SUMMARY JUDGMENT (Dkt. 55)

### I.    PROCEDURAL HISTORY

Plaintiff David K. Thompson filed a complaint on November 17, 2009,

alleging Defendants Correctional Medical Services, Inc. ("CMS") and Dr. Darrelle

Brady violated his civil rights under 42 U.S.C. § 1983. (Dkt. 1).[1] According to

plaintiff's complaint, defendants CMS and Dr. Brady deprived him of his

constitutional rights by failing to obtain an orthopedic consultation and an MRI

for his arm after he injured the biceps muscle and tendon in his left arm.

---

[1] Plaintiff also brought this action against Dr. Keith Ivens, but plaintiff's
complaint against Dr. Ivens was dismissed without prejudice on March 12, 2012,
for lack of service pursuant to Fed. R. Civ. P. 4(m) and Local Rule 41.2. (Dkt.
53).

This case was referred to the undersigned for all pretrial purposes on November 24, 2009. (Dkt. 7). On March 26, 2012, defendants CMS and Dr. Brady filed a motion for summary judgment. (Dkt. 55). Plaintiff filed a response on May 1, 2012. (Dkt. 57). Defendants did not file a reply. This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED IN PART** as to Dr. Brady and **DENIED IN PART** as to CMS.

## II.     STATEMENT OF FACTS

### A.      Plaintiff's Complaint

Plaintiff, a former inmate of the Michigan correctional system, alleges in his complaint that he severely injured his left arm on December 12, 2006 when he was incarcerated at the Gus Harrison Correctional Facility (South). Specifically, he claims that he was carrying a stack of wet food trays when they slipped, causing his left arm to hyper-extend and his left biceps muscle and tendon to "snap off at [his] elbow joint." He alleges that he went to health services, but that defendants CMS and Dr. Brady deprived him of his constitutional rights in violation of 42 U.S.C. § 1983 by failing to obtain an orthopedic consultation and an MRI for his injured arm, and by failing to prescribe appropriate pain medication. Plaintiff seeks injunctive relief and compensatory and punitive damages. (Dkt. 1).

B.    Factual Background

    1.    Plaintiff's medical treatment

In plaintiff's complaint, he alleges that he injured his arm on December 12, 2006, while working in food services.  (Dkt. 1).  Plaintiff claims he went directly to health services where he was seen by Nurse Janet Seets.  (Dkt. 55, Ex. A pp. 343-44).  Nurse Seets noted no objective evidence of injury, provided plaintiff with ice and ibuprofen, took plaintiff off work detail until December 18, 2006, and directed him to return to the clinic on December 14, 2006.  *Id.*

Plaintiff returned to the clinic for a recheck of his arm injury on December 14 and was seen by Dr. Brady.  Plaintiff reported his arm feels better but is still painful.  Dr. Brady documented a slight indentation on plaintiff's left arm with bruising in the area of the elbow, and that plaintiff's arm was painful to touch and movement.  (Dkt. 55, Ex. A., p. 342).  Dr. Brady indicated a presumed diagnosis of "distal biceps rupture" and recommended a referral to an orthopedic clinic on December 15, 2006.  *Id.* at p. 56.  The orthopedic consultation request was denied on December 20, 2006 by the medical review officer, Dr. Keith Ivens.  *Id.* at p. 55.  Dr. Ivens concluded that a surgical repair of the tendon was not medically necessary and checked the box indicating "[c]riteria for service not met."  *Id.*

Dr. Brady also ordered x-rays of plaintiff's left arm.  Plaintiff's arm was x-rayed on December 21, 2006, and the x-rays were normal.  (Dkt. 1, ¶ 19; Dkt. 55,

3

Ex. D).

Plaintiff returned to the clinic on December 28, 2006 for a recheck on his arm and was seen by Nurse Pam Friess. (Dkt. 55, Ex. A, p. 339). Nurse Friess documented pain in plaintiff's arm, dispensed Motrin, and kept plaintiff off work detail for an additional 30 days. *Id.* Plaintiff returned to the clinic on January 30, 2007, and stated that his left arm was healing well and that he felt he could return to work. *Id.* at p. 340.

The health clinic had no further contact with plaintiff until May 11, 2007, when plaintiff requested a copy of his medical records. (Dkt. 55, Ex. A, p. 336). Plaintiff reported to the clinic on June 16, 2007 for a follow-up visit on his left arm and was seen by Dr. Anil S. Prasad. *Id.* at pp. 334-35. Plaintiff reported that he had little pain (only 2/20), but could not lift more than about 20 pounds without pain. *Id.* Dr. Prasad noted a prominent biceps muscle belly and decreased strength in plaintiff's left arm of 3/5, but that the arm was otherwise normal. *Id.* Dr. Prasad indicated he would request an MRI of plaintiff's left arm to determine the extent of tear and any other pathology. *Id.* at pp. 334-36. Dr. DeMasi rejected Dr. Prasad's MRI request on June 20, 2007, indicating "Medical screening not met, new 407 with additional information noted below needs to be sent if MP chooses to pursue," and that "[a]t this late date, how will MRI effect Rx?" *Id.* at p. 331.

Dr. Brady met with plaintiff again on July 19, 2007 and informed him of the denial of the MRI. (Dkt. 55, Ex. A, p. 323). Dr. Brady indicated he would review the chart and consider the appeal process. *Id.* On August 1, 2007, Dr. Brady reviewed plaintiff's chart and emailed the RMO for recommendations. *Id.* at p. 316. There is nothing in the record evidence as to a response to Dr. Brady's email.

On December 7, 2007, plaintiff kited the clinic asking for a copy of the MRI denial. (Dkt. 55, Ex. A, p. 305). He kited the clinic again on February 2, 2008, requesting surgery on his left arm. *Id.* at p. 303. Plaintiff continued to inquire into the status of his surgery request and request pain medication and records regarding CMS's denial of his orthopedic consult and MRI requests on numerous occasions. *Id.* at pp. 293-302. On May 15, 2008, Dr. Brady reviewed plaintiff's charts regarding pain medication. *Id.* at p. 288. Dr. Brady examined plaintiff on July 17, 2008, and ordered a trial of Motrin at an increased dosage. *Id.* at pp. 285-86.

Plaintiff was seen by Nurse Seets on November 26, 2008, and complained that his arm continued to be painful, especially at night. (Dkt. 55, Ex. A, pp. 259-60). Nurse Seets gave plaintiff more ibuprofen and suggested an appointment with a physician. *Id.* Plaintiff met with Dr. Brady on December 4, 2008. *Id.* at pp. 251-52. Plaintiff complained of increased pain in his left arm, but Dr. Brady noted that he did not expect such extensive pain associated with an old injury. *Id.* Dr. Brady also noted that plaintiff declined x-rays but agreed to an increase in his

Motrin dose.  *Id.*

Dr. Brady next met with plaintiff on January 29, 2009 for a follow-up on plaintiff's elevated blood pressure.  (Dkt. 55, Ex. A, pp. 234-35).  At that check-up, Dr. Brady noted that plaintiff continued to question why he had not been approved for surgical repair of his ruptured biceps tendon, and Dr. Brady informed him that it had been determined that such repair was not medically necessary.  *Id.* The clinic continued to refill plaintiff's Motrin prescription.  On May 2, 2009, Plaintiff again requested that his request for surgery on his arm be resubmitted.  *Id.* at p. 217.  Dr. Brady met with plaintiff on May 14, 2009 and explained that the biceps tendon repair was not an option because it "should be done acutely."  *Id.* at p. 213.

Plaintiff was released from custody on April 8, 2011.

2.    <u>Plaintiff's grievances</u>

Plaintiff filed three grievances during his incarceration.  The first two grievances were filed in 2000 and 2001, long before plaintiff's left arm injury on December 12, 2006, and thus are not material to this dispute.

Plaintiff filed grievance ATF-08-4-004480-12d3 on April 2, 2008, complaining that defendants CMS and Dr. Brady violated the Eighth Amendment by failing to provide him with an MRI and obtain a surgical consult for his left arm. (Dkt. 55, Ex. D).  That Step I grievance was denied on April 29, 2008.  *Id.*

6

MDOC explained that CMS determined that the orthopedic consultation and MRI requests were not medically necessary, and that surgical repair of plaintiff's arm injury was not medically indicated. *Id.* Plaintiff filed a Step II grievance on April 30, 2008, which was denied on May 23, 2008. *Id.* A Step III grievance was filed on June 2, 2008, and denied on August 5, 2008. *Id.*

C.    <u>Parties' Argument</u>

1.    <u>Defendants' arguments</u>

Defendants CMS and Dr. Brady argue that plaintiff's § 1983 action must be dismissed because plaintiff failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"). Defendants explain that the Michigan Department of Corrections (MDOC) grievance policy in effect at the time of plaintiff's injury required plaintiff to attempt to verbally resolve an issue within two days of discovering a grievable issue and then file a Step I grievance form within five business days of the attempted verbal resolution. Defendants argue that plaintiff's grievance was filed 16 months after Dr. Brady requested an orthopedic referral and MRI, and thus the grievance is untimely under the MDOC grievance policy, even though the merits of the grievance were addressed.

Defendants further argue that plaintiff has failed to allege that CMS had a "custom and practice" of denying inmates medical care, and thus CMS cannot be

liable to plaintiff under section 1983. Finally, defendants argue that plaintiff has failed to allege any facts demonstrating Dr. Brady's deliberate indifference to plaintiff's medical needs, and thus plaintiff's claims against Dr. Brady must be dismissed.

### 2. Plaintiff's response

Plaintiff responds that he properly exhausted his administrative remedies under the PLRA because his medical treatment was ongoing and he properly filed his grievances following his attempts to resolve the issue. Plaintiff further responds that he has demonstrated that CMS had a custom or policy of denying medical care because he showed that CMS stated that the reason it denied the request for an orthopedic consultation, MRI and surgery is because its "Criteria" were not met. Finally, plaintiff argues that he has demonstrated Dr. Brady's deliberate indifference to plaintiff's serious medical condition because he claims Dr. Brady "absolutely refused to prescribe ready and available pain medication" and because Dr. Brady "disregarded th[e] substantial risk of harm to the plaintiff" when "the CMS criteria was used in order to deny the plaintiff medical treatment." (Dkt. 57).

## III. ANALYSIS AND CONCLUSIONS

### A. Standard of Review

Summary judgment is appropriately rendered "if the pleadings, depositions,

answers to interrogatories and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and the moving

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Redding*

*v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining

whether summary judgment is appropriate is "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-

sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co.*

*v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Furthermore, the evidence and all

reasonable inferences must be construed in the light most favorable to the non-

moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact,

the burden of demonstrating the existence of such an issue shifts to the non-

moving party to come forward with "specific facts showing that there is a genuine

issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the

party opposing a motion for summary judgment must make an affirmative showing

with proper evidence and must "designate specific facts in affidavits, depositions,

or other factual material showing 'evidence on which the jury could reasonably

find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004).

In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

B.    Legal Analysis

1.    Exhaustion of Administrative Remedies

Defendants argue that plaintiff has failed to properly exhaust his administrative remedies against CMS and Dr. Brady prior to filing this civil action. Specifically, defendants argue that plaintiff's grievance was untimely because it was filed 16 months after Dr. Brady first requested an orthopedic referral for plaintiff's arm injury.

a.    *Legal Standards*

In *Jones v. Bock*, 549 U.S. 199 (2007), the United States Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." *Id*. at 216-17. The Court defined the level of detail necessary to exhaust as simply compliance with the administrative grievance process. *Id*. at 218. Moreover, the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting

exhaustion as an affirmative defense. *Id.* at 217. Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed. Appx. 461, 462 (6th Cir. 2007) (a prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden–the plaintiff on a claim for relief or the defendant on an affirmative defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

b.      *Purpose of exhaustion requirement*

The Supreme Court defines proper exhaustion under 42 U.S.C. § 1997e(a) as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90

(quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 90-91. The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id*. at 93 (quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002) (alteration omitted)). Exhaustion serves a dual purpose: it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id*. at 94. Additionally, the exhaustion requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 549 U.S. at 204.

Before *Jones* invalidated the additional exhaustion procedures placed on prisoner civil rights suits by the Sixth Circuit, a prisoner was required to "file a grievance against the person he ultimately seeks to sue," and exhaust the claim as to each defendant associated with the claim. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001). The critical holding in *Jones* was that the PLRA does not impose

additional exhaustion procedures or requirements outside the prison's grievance

procedures. As observed in *Jones*, the primary purpose of a grievance is to alert

prison officials of a particular problem. *Jones*, 549 U.S. at 219; *see also Bell v.

Konteh*, 450 F.3d 651, 651 (6th Cir. 2006) ("[I]t is sufficient for a court to find

that a prisoner's [grievance] gave prison officials fair notice of the alleged

mistreatment or misconduct that forms the basis of the constitutional or statutory

claim made against a defendant in a prisoner's complaint.").

   *c.* *The Michigan Department of Corrections Grievance*
     *policy*

   The grievance process in effect at the time of plaintiff's injury is set forth in

MDOC policy directive 03.02.130 entitled "Prisoner/Parolee Grievances." (Dkt.

55, Ex. E). This policy was superseded by a new policy effective July 9, 2007.

(Dkt. 55, Ex. F). However, the procedures under each policy are similar.

   There are four stages to the grievance process that must be followed before

a prisoner can seek judicial intervention, each with specific time limits. First, the

prisoner must attempt to verbally resolve the issue with the staff member(s)

involved within two business days of becoming aware of a grievable issue. If the

issue is not resolved, the prisoner may file a Step I grievance within five business

days of the attempted verbal resolution. If the prisoner is not satisfied with the

Step I outcome, he must request a Step II appeal form within five days, and he

then has an additional five days to file the Step II appeal. If the inmate is still not satisfied with the result, he must then file a Step III appeal within 10 business days. The Step III response ends the administrative process. (Dkt. 55, Exs. E, F).

<em>d.    Plaintiff's grievance</em>

Defendants contend that plaintiff's grievance was untimely because it was filed 16 months after Dr. Brady first requested an orthopedic referral and thus, presumably, was not filed within two business days of becoming aware of a grievable issue. However, it is undisputed that prison officials addressed plaintiff's grievance on the merits rather than dismissing it as untimely. (Dkt. 55, Ex. D). MDOC explained that CMS determined that the orthopedic consultation and MRI requests were not medically necessary, and that surgical repair of plaintiff's arm injury was not medically indicated. *Id.*

Although "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings," *Woodford*, 548 U.S. at 90-91, courts that have considered the issue have held that a prisoner who files a late complaint that is nevertheless addressed by the prison system on the merit has properly exhausted his administrative remedies. *See Ellis v. Vadlamudi*, 568 F. Supp.2d 778, 785-86 (E.D. Mich. 2008) (collecting cases in which the courts have held that a prisoner who files a late

grievance that is nevertheless addressed by the prison system has properly

exhausted his remedies); *see also Broder v. Correctional Med. Services*, 2008 WL

704229, at *2 (E.D. Mich. Mar. 14, 2008) (rejecting defendants' failure to exhaust

argument because the MDOC reviewed and decided plaintiff's grievances on the

merits rather than rejecting them as untimely); *Baker v. Vanderark*, 2007 WL

3244075, at *8 (W.D. Mich. Nov. 1, 2007) (finding exhaustion satisfied because

MDOC accepted the grievance and addressed it on the merits rather than rejecting

it or denying it as untimely).

In this case, it is undisputed that MDOC reviewed and decided plaintiff's

grievance on the merits. It did not reject the grievance as untimely. Consequently,

the undersigned finds no basis for deeming plaintiff's grievance unexhausted. *See*

*Ellis*, 568 F. Supp.2d at 785-86; *Broker*, 2008 WL 704229, at *2. Accordingly,

the undersigned **RECOMMENDS** that defendants' motion for summary judgment

be **DENIED** on this basis.

2.     <u>Plaintiff's § 1983 claim against CMS</u>

Plaintiff claims that defendants, including CMS, violated the Eighth

Amendment's prohibition of cruel and unusual punishment. Defendants argue that

plaintiff has failed to allege facts to support his claims against CMS because

liability under § 1983 cannot be based merely on a theory of *respondeat superior*,

and plaintiff has failed to provide facts or evidence that CMS had a "custom and

practice" of denying inmates medical care.

###### a. *Legal standard*

Treatment of a prisoner violates the Eighth Amendment when it constitutes "deliberate indifference to [the] prisoner's serious illness or injury." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). Because CMS was providing medical services to inmates under contract with MDOC, it may properly be sued under § 1983. *See Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993). As defendants correctly argue, CMS cannot be held liable under § 1983 on a supervisory liability theory. The Supreme Court disallowed § 1983 *respondeat superior* liability in *Monell v. Department of Social Services,* 436 U.S. 658 (1978), which held that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Instead, a government body—or a nongovernmental entity such as CMS, in this case—can be found liable under § 1983 where a constitutional wrong arises from execution of that entity's policies or customs. *Id.* at 694.

For his claim to succeed, plaintiff must: (1) identify a policy or custom; (2) connect the policy or custom to CMS; and (3) show that executing that policy amounted to deliberate indifference to plaintiff's injury. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (holding that "to satisfy the Monell requirements a plaintiff must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of

that policy" (internal quotation marks omitted)). A "custom" need not be formally approved or officially adopted by the entity, however. As the *Monell* Court noted: "Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68 (1970)) (quotation marks omitted).

### b. *Analysis*

Defendant CMS argues that it is entitled to summary judgment because plaintiff has failed to allege any facts that demonstrate that CMS had a policy, practice, or procedure of denying inmates medical care. CMS argues that treatment and referral decisions were made by independent contractor physicians based upon considerations specific to each inmates needs. In support of its motion, CMS attached the affidavit of Joy Lloyd, an employee of Corizon, Inc. f/k/a Correctional Medical Services. Ms. Lloyd attests that CMS "did not have a policy of denying inmates access to outside specialists, including orthopedic surgeons," but that CMS "provided utilization management services to independent contractor physicians to help the physicians in exercising their individual judgment as to whether a particular service met nationally recognized criteria." (Dkt. 55, Ex. G). Ms. Lloyd does not explain what those "nationally recognized criteria" are or how they are determined.

Plaintiff responds that CMS's stated reason for its denial of plaintiff's request for an orthopedic referral and MRI–because "Criteria for service not met"–indicates that CMS used a policy, custom, practice or set of rules to deny him requested medical care.  Criteria is defined as "[a] test, principle, rule, canon, or standard by which anything is judged or estimated." *Oxford English Dictionary Online*, December 2012, Oxford University Press, http://www.oed.com/view/Entry/44581?redirectedFrom=criteria.  Plaintiff argues that CMS used the "Criteria" to deny necessary medical treatment in the form of a orthopedic referral, MRI and surgery request.

In determining whether to grant summary judgment, all justifiable inferences must be drawn in favor of the non-movant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Plaintiff here had the right to receive adequate medical care while incarcerated and under the care of defendant CMS. *See Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976).  Those responsible for plaintiff's medical care had the duty to prevent "undue suffering or the threat of tangible residual injury."  *Id.*

Contrary to defendants' assertions, plaintiff has done more than plead only generic allegations that CMS was responsible for denying his request for surgery. Plaintiff argued that CMS denied medical care based on CMS "criteria," which is supported by the record evidence.  (Dkt. 55, Ex. A, p. 54).  Dr. Ivens denied

authorization for the orthopedic referral for "Criteria for service not met" and not for "Does not meet the definition of 'medically necessary.'" *See id.* Taking the evidence of CMS's justification for its denial of an orthopedic referral, MRI and surgery in the light most favorable to plaintiff, it is a reasonable inference that CMS denied the requested medical care pursuant to a "custom or practice"–"[c]riteria for service not met"–and that execution of that practice amounted to the denial of medical care in deliberate indifference to plaintiff's injury.

The undersigned finds that plaintiff has raised a genuine issue of material fact as to whether CMS had a "custom or practice" of denying inmates medical care. Accordingly, the undersigned **RECOMMENDS** that defendants' motion for summary judgment as to CMS's liability be **DENIED**.

### 3. Plaintiff's § 1983 claim against Dr. Brady

Plaintiff also asserts a § 1983 claim against Dr. Brady, in both his official and individual capacities. Specifically, plaintiff alleges that Dr. Brady was deliberately indifferent to plaintiff's serious medical needs because Dr. Brady refused to prescribe "ready and available pain medication for the plaintiff" and he "disregarded a substantial risk of harm" to plaintiff "when the CMS criteria was used in order to deny the plaintiff medical treatment." (Dkt. 57).

#### a. *Legal standard*

It has been widely recognized that the provision of inadequate medical care to a prisoner gives rise to liability under § 1983. *See e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 2006). However, liability is imposed only if the allegations arise to the level of a constitutional deprivation. *Caldwell*, 968 F.2d at 599.

In order to make a claim of an Eighth Amendment violation due to inadequate medical treatment, two requirements must be met, an objective element and a subjective element. First, "the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834. In the medical context, this means that the plaintiff must show that he had a serious medical need that has been either diagnosed by a physician as requiring treatment or is so obvious that a lay person could recognize the necessity for treatment. *Id.* Second, "a prison official must have a 'sufficiently culpable state of mind,'" such that his actions constitute an unnecessary and wanton infliction of pain. *Id.* That is, the defendant, being aware of the plaintiff's serious medical need, acts in deliberate indifference to it. *Wilson v. Seiter*, 501 U.S. 294, 300 (1991).

As explained above, the Supreme Court has made clear that liability in a § 1983 action cannot be based on a theory of *respondeat superior*. *See Monell*, 436 U.S. at 691. Thus, "[t]o recover damages under 42 U.S.C. § 1983, a plaintiff must

establish a defendant's *personal responsibility* for the claimed deprivation of a constitutional right." *Broder v. Correctional Medical Services, Inc.*, 2008 WL 704229, at *7 (E.D. Mich. Mar. 14, 2008) (emphasis added, quoting *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993)). In other words, in order to state a claim under § 1983, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was *personally involved* in the deprivation of his civil rights. Liability under § 1983 must be based on the *personal involvement* of the defendant." *Id.* (emphasis added, internal quotations and citations omitted). Liability under § 1983 is predicated upon an affirmative link or connection between the defendant's actions and the claimed deprivations. *See Rizzo v. Goode*, 423 U.S. 362, 372-73 (1976).

> b.    *Analysis*

In the present case, whether plaintiff has a "serious medical need" is not clear. The Sixth Circuit has stated that a medical need is sufficiently serious if the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004) (citation omitted). For obvious medical needs left completely untreated, "the delay alone in providing medical care creates a substantial risk of serious harm." *Id.* at 899. By contrast, where a "'deliberate indifference' claim is based on a prison's failure to treat a condition adequately" or on "a determination by

medical personnel that medical treatment was unnecessary," a plaintiff must "place

verifying medical evidence in the record to establish the detrimental effect of the

delay in medical treatment." *Id.* at 897-98.

It is undisputed that plaintiff was diagnosed with a ruptured biceps/tendon

and that he received some minimal medical care for his injury–he was examined

by the medical staff and received ice, pain medication, and an x-ray. However, he

was denied any diagnostic testing in the form of an MRI and denied a referral to

an orthopedic specialist for further assessment of his injury and possible surgery.

In *Johnson v. Karnes*, 398 F.3d 868 (6th Cir. 2005), the Sixth Circuit found

the plaintiff's medical need "quite obvious" where "[h]is medical request forms

stated that his tendons were completely severed–a condition that almost any lay

person would realize to be serious." *Id.* at 874 (citing affidavit testimony that "it

is common medical knowledge, which should be known to every medical

practitioner, that severed tendons must be repaired in a timely manner, because

over time the severed tendons will retract, and may become inoperable."). The

*Johnson* court further stated that even if the plaintiff's injury failed to qualify as

obvious, the affidavit testimony, together with the plaintiff's testimony that he had

lost most use of his right hand, would be sufficient to demonstrate a genuine issue

of material fact as to the detrimental effect of the delayed treatment. *Id.* at 875.

Conversely, in *Blosser v. Gilbert*, 422 Fed. Appx. 453 (6th Cir. 2011), the

Sixth Circuit found that the plaintiff with a ruptured biceps tendon failed to establish that his injury constituted a serious medical need. *Id.* at 460-61. The court reasoned that the plaintiff in that case was not denied medical care, but instead was regularly examined, received his pain medication, monitoring and care, and was referred to a specialist, just not as quickly as he would have liked. *Id.* Thus, the court analyzed the plaintiff's claim under a "effect-of-delay" standard (as opposed to a denial of care standard), which required plaintiff to produce verifying medical evidence to establish the detrimental effect of the delay in medical treatment. *Id.* at 460. The court found "[n]o medical evidence indicates that Plaintiff required surgery, that Plaintiff was considered a candidate for surgery by any of his treating physicians, or that any delay in making an appointment in the orthopedic clinic harmed Plaintiff." *Id.* at 461.

Here, plaintiff received only the minimal care as a result of CMS's denial of an orthopedic referral and MRI. Unlike the plaintiff in *Blosser*, he was refused examination by a specialist. Further, the record medical evidence documents a loss of strength in plaintiff's left arm (3/5), a permanent disfigurement, and that surgery was no longer an option because surgical repair should have been done acutely. Thus, taking all reasonable inferences in favor of the plaintiff, the undersigned finds that plaintiff has raised an issue of fact as to whether he has established a "serious medical need."

The undersigned finds further, however, that plaintiff cannot raise a genuine issue of material fact as to the second requirement–that Dr. Brady was deliberately indifferent to his serious medical needs.

In order to establish a defendant's culpable state of mind, a plaintiff must show that the defendant acted recklessly – specifically, that he "[knew] of and disregard[ed] an excessive risk to inmate health and safety." *See Farmer*, 511 U.S. at 836-37. This standard entails a "state of mind more blameworthy than negligence," but is "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 836.

First, plaintiff's complaint that Dr. Brady was deliberately indifferent to plaintiff's medical needs because he claims Dr. Brady "absolutely refused to prescribe ready and available pain medication" fails as a matter of law. The facts demonstrate that Dr. Brady did prescribe pain medication to plaintiff following his left arm injury and thereafter. (Dkt. 55, Ex. A). It is clear that Dr. Brady made an educated recommendation regarding pain management based on his medical judgment and a review of plaintiff's chart. Plaintiff's dissatisfaction with Dr. Brady's recommended pain management is essentially a mere disagreement with the course of treatment provided, which cannot not rise to the level of an Eighth Amendment deprivation. *See, e.g.*, *Estelle*, 429 U.S. at 107; *Westlake*, 537 F.2d at 860 n. 5. Where, as here, "a prisoner has received some medical attention and the

dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake*, 537 F.2d at 860, n. 5. The undersigned finds that the record evidence demonstrates that Dr. Brady did not refuse to provide pain medication to plaintiff following his injury and thus did not exhibit deliberate indifference towards plaintiff 's afflictions and therefore did not violate plaintiff's Eighth Amendment rights.

Second, plaintiff argues that Dr. Brady disregarded a substantial risk of harm when CMS criteria were used to deny him medical care. (Dkt. 57). The undisputed facts establish that Dr. Brady examined plaintiff shortly after his arm injury, recommended an x-ray of plaintiff's left arm, and provided plaintiff with pain medication and treatment for his arm injury. Dr. Brady also recommended an orthopedic referral for plaintiff when he first examined plaintiff on December 14, 2006, and recommended an additional x-ray of plaintiff's arm on a follow-up visit, which plaintiff refused. That request was denied by Dr. Ivens pursuant to CMS criteria, not by Dr. Brady. (Dkt. 55, Ex. A). Similarly, Dr. Brady was not responsible for denying Dr. Prasad's request for an MRI of plaintiff's left arm. *Id.* In order to state a claim under § 1983, plaintiff must allege admissible evidence that Dr. Brady "was personally involved in the deprivation of his civil rights" because "[l]iability under § 1983 must be based on personal involvement of the

defendant." *See Broder*, 2008 WL 704229, at *7.

Plaintiff has offered no admissible facts or evidence that Dr. Brady acted with deliberate indifference to plaintiff's medical needs. Rather, the record evidence shows that Dr. Brady acted reasonably in response to plaintiff's medical needs, and plaintiff's complaints that Dr. Brady should have done more does not amount to recklessness or deliberate indifference. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted" because "[m]edical malpractice" or negligence "does not become a constitutional violation merely because the victim is a prisoner." *Parsons v. Caruso*, — Fed. Appx. —, 2012 WL 3186662, at *9 (6th Cir. Aug. 7, 2012) (finding that even if the doctor should have, in hindsight, expended more effort to ensure that plaintiff received his medication right away, the failure to do so does not amount to recklessness or deliberate indifference); *see also Lawrence v. Virginia Dep't of Corrections*, 308 F. Supp.2d 709, 722 (E.D. Va. 2004) (finding prison physician not deliberately indifferent to inmates serious medical needs where physician examined him 13 times over 18-month period, diagnosed inmate's conditions, wrote numerous prescriptions, and ordered several tests).

Dr. Brady did not deny plaintiff's request for an orthopedic referral or for an MRI, and thus there is no genuine issue as to any material fact that Dr. Brady was

deliberately indifferent to plaintiff's medical needs. Accordingly, the undersigned **RECOMMENDS** that defendants' motion for summary judgment as to Dr. Brady be **GRANTED**.[2]

## IV. RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED IN PART** as to defendant Dr. Brady and **DENIED IN PART** as to defendant CMS.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health*

---

[2]The undersigned notes that its recommendation that summary judgment be granted in favor of Dr. Brady does not mandate summary judgment for CMS as well. The Sixth Circuit has recognized that a municipality may be liable under § 1983 even where an individual government actor is exonerated because the municipal liability is based on the actions of actors other than those who are named as parties. *See Ford v. Grand Traverse Cty.*, 2006 WL 3613292, at *3 (W.D. Mich. Dec. 11, 2006) (*citing Bowman v. Correction Corp. of Am.*, 350 F.3d 537, 545 (6th Cir. 2003)).

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

s/Michael Hluchaniuk

Michael Hluchaniuk

United States Magistrate Judge

Date: January 24, 2013

**CERTIFICATE OF SERVICE**

      I certify that on January 24, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Richard A. Joslin, Jr., and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): David Thompson, ID# 241862, 10235 County Road 487, Atlanta, MI 49709.

                                      s/Tammy Hallwood
                                      Case Manager
                                      (810) 341-7887
                                      tammy_hallwood@mied.uscourts.gov