UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID THOMPSON,

            Plaintiff,

v.

CORRECTIONAL MEDICAL
SERVICES, INCORPORATED,

            Defendant.
_____/

Case No. 09-14483

Paul D. Borman
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

OPINION AND ORDER: (1) DENYING PLAINTIFF'S OBJECTIONS (ECF NO. 96); (2) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (ECF NO. 94); (3) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NOS. 55, 91); (4) DISMISSING PLAINTIFF'S CLAIMS AGAINST DEFENDANT CMS WITH PREJUDICE; AND (5) CLOSING THE CASE

On June 12, 2015, Magistrate Judge Michael Hluchaniuk issued a Report and Recommendation in favor of granting Defendant Correctional Medical Services, Inc.'s ("CMS") Motion for Summary Judgment (ECF Nos. 55, 91). (ECF No. 94, Report and Recommendation.) Pursuant to a joint stipulated order, Plaintiff David Thompson filed Objections to the Report and Recommendation on July 15, 2015. (ECF No. 96.) On July 29, 2015, Defendant CMS filed a Response to Plaintiff's Objections. (ECF No. 97.)

This Court reviews *de novo* the portions of a report and recommendation to which objections have been filed. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). Having conducted a *de novo* review of the parts of the Magistrate Judge's Report and Recommendation to which valid objections have been filed pursuant to 28 U.S.C. § 636(b)(1), the Court will adopt the Report and Recommendation and deny the Plaintiff's objections.

I. PERTINENT PROCEDURAL HISTORY

This case has a long procedural history that is pertinent to the issues that are now before the Court. Plaintiff originally filed this action, *pro se*, on November 17, 2009.[1] (ECF No. 1). Plaintiff alleged that while he was in custody at Gus Harrison Correctional Facility Defendants CMS and Dr. Darrelle Brady deprived him of certain constitutional rights by failing to obtain an orthopedic consultation or an MRI for him after he sustained a rupture to the biceps tendon of his non-dominate left arm. Defendants CMS and Dr. Brady filed a joint motion for summary judgment on March 26, 2012, which was referred to Magistrate Judge Michael Hluchaniuk. (ECF. Nos. 7, 55.)

On January 24, 2013, Magistrate Judge Hluchaniuk issued a Report and Recommendation that recommended summary judgment be granted as to Defendant Dr. Brady but denied as to Defendant CMS. (ECF No. 61.) Magistrate Judge Hluchaniuk held that no genuine issue of material fact existed as to whether Defendant Dr. Brady was deliberately indifferent to Plaintiff's medical needs (*id*. at 26-27), but concluded that a genuine issue of material fact existed as to whether Defendant CMS had a "custom or practice" of denying inmates medical care (*id*. at 19). Specifically, Magistrate Judge Hluchaniuk found that "it is a reasonable inference that CMS denied the requested medical care pursuant to a 'custom or practice' - '[c]riteria for service not met' – and that execution of that practice amounted to the denial of medical care in deliberate indifference to plaintiff's injury." (ECF No. 61, at 19.)

---

[1] Plaintiff's original complaint also named Dr. Keith Ivens as a defendant, however, the claims against Dr. Ivens were dismissed without prejudice on March 12, 2012 for lack of service pursuant to Fed. R. Civ. P. 4(m) and Local Rule 41.2. (ECF No. 53.)

Defendant CMS then filed an objection to that recommendation arguing that Defendant CMS was also entitled to summary judgment. (ECF No. 62.) Plaintiff did not object to the Report and Recommendation.

Plaintiff then filed a motion for the appointment of counsel with this Court (ECF No. 63) that was granted on October 11, 2013. (ECF No. 64.) Thereafter, Plaintiff's new counsel filed a motion pursuant to FED. R. CIV. P. 56(d) seeking to engage in discovery. (*See* ECF No. 66.) Plaintiff's counsel also filed a motion seeking leave to file an amended complaint on November 16, 2013. (ECF No. 67.)

On March 10, 2014, Magistrate Judge Hluchaniuk issued an Order which denied Plaintiff's Rule 56(d) motion to undertake discovery but granted Plaintiff's motion for leave to file an amended complaint.[2] (ECF No. 74, Order at 8; ECF No. 75, Am. Compl.) Thereafter, Plaintiff filed a "Motion for Reconsideration and Remand of the Report and Recommendation as to CMS Only." (ECF No. 78). On August 8, 2014, this Court granted Plaintiff's motion for reconsideration and returned the Report and Recommendation (ECF No. 61) to the Magistrate Judge with instructions to "reconsider the motion for summary judgment as to Defendant CMS after Plaintiff, through his newly-appointed counsel, has had an opportunity to seek discovery as outlined in his Rule 56(d) motion (*see* ECF No. 66) and both parties have had an opportunity to submit supplemental briefing on the motion for summary judgment." (ECF No. 79, at 6.) Defendant CMS's objections to the January 24, 2013 Report and Recommendation were then denied as moot. (*Id*.)

---

[2] The Amended Complaint eliminated Dr. Brady as a named defendant. Therefore, the only remaining defendant in this action is Defendant CMS.

3

Over the course of the following year, the parties engaged in motion practice regarding discovery and Magistrate Judge Hluchaniuk extended the discovery deadline twice pursuant to two stipulated orders. (ECF Nos. 83, 88.) On April 10, 2015, Defendant CMS filed its supplemental brief in support of summary judgment. (ECF No. 91.) On April 28, 2015, Plaintiff filed his supplemental response. (ECF No. 92.) Magistrate Judge Hluchaniuk held oral argument on May 20, 2015 and thereafter issued a Report and Recommendation recommending that this Court grant Defendant CMS's motion for summary judgment.

## II. BACKGROUND

The pertinent background facts of this matter are set forth in great detail in the Magistrate Judge's Report and Recommendation and the Court adopts and incorporates them here. (ECF No. 94, at 3-7.)

## III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), the Court conducts a de novo review of the portions of the Magistrate Judge's Report and Recommendation to which a party has filed "specific written objections" in a timely manner. *Lyons v. Comm'r Soc. Sec*., 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004). Only those objections that are specific are entitled to a de novo review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir.1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id*. (internal quotation marks and citation omitted). A general objection, or one that merely restates the arguments previously presented, does not sufficiently identify alleged errors on the part of the magistrate judge. An "objection" that does nothing more than disagree with a magistrate judge's determination, "without

4

explaining the source of the error," is not considered a valid objection. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir.1991).

Defendant has moved for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure. This rule provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of genuine issue of material fact." *Id*. at 323; *see also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th

Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

## IV. ANALYSIS

After a period of discovery and the appointment of counsel for Plaintiff, Defendant CMS filed its supplemental brief in support of summary judgment arguing that it did not maintain a policy or custom of delaying or denying inmates access to offsite medical care and that even if it had, such a policy or custom did not cause Plaintiff's injury. (*See* ECF No. 91, Def.'s Supp. Br., at 1-2; ECF No. 74, Am. Compl. at ¶¶ 33, 34.)

In the Report and Recommendation, the Magistrate Judge noted

> that like a municipal corporation, "[CMS's] liability must also be premised on some policy that caused a deprivation of [a prisoner's] Eighth Amendment rights." *Starcher v. Corr. Med. Sys., Inc*., 7 Fed. App'x 459, 465 (th Cir. 2001). Thus, in order to state a § 1983 claim against defendant CMS, plaintiff "must

6

> allege the existence of a policy, practice or custom that resulted in the injury."
> *Moreno v. Metropolitan Gen. Hosp.*, 2000 WL 353547, *2 (6th Cir. 2000).

(ECF No. 94, at 21.) The Magistrate Judge further noted that "'before reaching the issue of whether the municipality was deliberately indifferent,' the 'plaintiff must demonstrate a constitutional violation at the hands of an agent or employee of the municipality.'" (ECF No. 94, at 23, quoting *Fox v. DeSoto*, 489 F.3d 227, 238 (6th Cir. 2007).) The Magistrate Judge then concluded that Plaintiff had failed to evidence that any of Defendant CMS's employees violated his Eighth Amendment rights in regards to his medical treatment and as a result his claim regarding municipal liability must fail. (*Id*. at 23-24.) The Magistrate Judge further determined that Plaintiff had failed to establish a genuine issue of material fact regarding whether Defendant CMS had a policy or custom of non-authorization of requests for outside consultations of distal biceps tendon ruptures that led to a violation of Plaintiff's Eighth Amendment rights. (*Id*. at 26-34.) Accordingly, the Magistrate Judge recommended Defendant CMS's motion for summary judgment be granted.

Plaintiff now enumerates four objections to the Magistrate Judge's Report and Recommendation. The Court will address each objection in turn.

### A. Objection 1

Plaintiff argues that contrary to the finding by the Magistrate Judge, Plaintiff did create a genuine issue of material fact regarding whether Defendant CMS had a policy or practice in 2006 of denying authorization for referrals to outside consultants for distal biceps tendon ruptures. Plaintiff contends that the diagnosis of ruptured distal biceps tendon was removed from the "pass-through list" as of 2006 and that removal evidenced a policy of non-authorization. In other words, Plaintiff argues that prior to 2006 if a prisoner presented with a

distal biceps tendon rupture, he or she would be automatically approved for referral for an outside consultant without review by a Universal Manager nurse. Plaintiff theorizes that the removal of that diagnosis from the "pass through" list in 2006 creates a genuine issue of material fact of whether in 2006, Defendant instituted a policy of denying all authorizations for outside referrals for distal biceps tendon ruptures, which included Plaintiff's injury. (Pl.'s Obj. at 5.) Accordingly, Plaintiff argues that the Magistrate Judge erred in failing to consider this change to the policy.

Assuming without deciding that such a change occurred in 2006, Plaintiff's argument still fails. Plaintiff ignores the fact that even if the diagnosis of distal biceps tendon rupture was removed from the "pass through" list in 2006, such a change would only have resulted in the request for an outside consultation being evaluated using the standard review process utilized by Defendant CMS. The Magistrate Judge set forth in detail the process that Defendant CMS used for authorizing referrals for outside medical consultations. (*See* ECF No. 94, at 26-28.) Plaintiff concludes that removal of the diagnosis from the "pass through" list would have placed the diagnosis on "a list of automatically not being approved," however, this conclusion is not supported with any evidence or argument. (Pl.'s Obj. at 6.) One cannot reasonably infer that removal from the "pass through" list would have resulted in the automatic denial of the request for referral. Rather, in light of the extensive operating procedures that govern the request process, one can only reasonably infer that removing a diagnosis from the "pass through" list merely subjected the diagnosis to the regular process of review. Accordingly, Plaintiff's argument is unpersuasive.

Additionally, Plaintiff argues that Dr. Brady's testimony supports the conclusion that there was a "change in procedure" in 2006 "regarding whether CMS would authorize a surgical

8

repair of a distal bicep rupture." (Pl.'s Obj. at 5.) Plaintiff appears to argue that this testimony supports an inference that Defendant CMS instituted a policy in 2006 of automatically denying all outside referrals for distal biceps ruptures. Plaintiff asserts that Dr. Ivens informed Dr. Brady of this change in policy in 2006 and this testimony "is consistent" with Defendant CMS's treatment of distal bicep ruptures historically. The Court finds that Plaintiff misconstrues Dr. Brady's testimony as Dr. Brady testified that he had "no knowledge" of how Defendant CMS treated the rupture of biceps tendon prior to 2006 because he had never encountered one. (Brady Dep. at 95.) Further, Dr. Brady explained that Dr. Ivens had informed him about a "change in approach" regarding the treatment of ruptured biceps tendons as it related to the "medical community as a whole" rather than just Defendant CMS's treatment of the same. (*Id*. at 95-96.) Therefore, the Court finds that Dr. Brady's testimony does not support an inference that in 2006 Defendant CMS instituted a policy or custom of non-authorizing outside medical care for that diagnosis.

For all these reasons, the Court finds the Magistrate Judge did not err in his treatment of the "pass through" list and the Magistrate Judge did not err in finding that there was no evidence that Defendant CMS had a policy or practice of non-authorizing requests for outside consultations of distal biceps ruptures.

      B.      Objection 2

Plaintiff next argues that the Magistrate Judge erred when he "emphasized" the appeal process that was part of Michigan Department of Correction's ("MDOC") operating procedure when that procedure had no impact on determining whether Defendant CMS had a policy or practice of denying outside referrals for distal biceps ruptures. Plaintiff contends that because a Medical Service Provider ("MSP") "is in complete control of whether, and in what

9

circumstances an appeal will be filed, the MDOC's appeal procedure does not support the *Report and Recommendation*'s contention that it did not have an unconstitutional policy or practice just because on paper that process looked good." (Pl.'s Obj. at 7 (alterations in original).)

The Court finds Plaintiff's objection on this issue to be without merit. While Plaintiff contends that the Magistrate Judge "emphasized the appeal process" in his analysis, the record clearly indicates that the appeal process was merely one factor of many. The Magistrate Judge summarized Defendant CMS's process for authorizing referrals for outside medical consultation which included the appeals process. (ECF No. 94, at 26-28.) The Magistrate Judge also noted that "[i]mportantly, during all times relevant to this litigation, CMS has handled between 1,500 and 2,000 referrals for outside services for the MDOC" and "averaged a 90-percent authorization rate on the first-pass, which did not account for authorizations subsequently approved on appeal." (*Id*. at 28.) Finally, the Magistrate Judge noted that both Nurse May and Dr. Hutchinson testified that Defendant CMS erred on the side of authorization. (*Id*.)

Plaintiff also misconstrues the appeals process itself. Plaintiff argues that the MSP is in complete control of whether to initiate an appeal, but MDOC procedure also allowed for a regional medical officer to appeal a denial for non-authorization. (*See* ECF No. 91, Def.'s Supp. Br., Ex. C, Hutchinson Dep. at 56; Ex. B, MDOC Operating Procedure.) The Magistrate Judge specifically noted this fact, explaining: "[t]he MDOC procedure also allowed for appeals for non-authorization and provided for the involvement of the MDOC regional and chief medical officer, beyond the initial appeal made by the medical service provider." (ECF No. 94, at 28.)

Finally, Plaintiff argues that the Magistrate Judge erred in "accepting" Defendant CMS's argument that there was no incentive for it to deny outside consultation. Plaintiff's citation to the Report and Recommendation, however, is to the Magistrate Judge's recitation of Defendant

10

CMS's arguments. There is nothing in the Report and Recommendation indicating that the Magistrate Judge adopted or relied upon this argument in his analysis. (*See* ECF No. 94, at 7-12, under Subsection III(A).) Accordingly, Plaintiff's objection is denied.

C. Objection 3

Plaintiff argues that the Magistrate Judge also erred in finding that Plaintiff was provided treatment that would preclude a finding of deliberate indifference. To this end, Plaintiff argues that the Magistrate Judge's conclusion was wrong for three reasons: (1) that the Magistrate Judge made an improper factual determination that Plaintiff received "some [medical] treatment;" (2) the Magistrate Judge erroneously concluded that surgical intervention was just one option available to treat Plaintiff; and (3) the Magistrate Judge "failed to recognize that the seriousness of Plaintiff's medical injury made the need for medical care obvious even to a layperson." (*See* ECF No. 96, Pl.'s Obj. at 9-16.)

As to Plaintiff's first argument, the Court finds the Magistrate Judge did not make any impermissible factual determinations. Plaintiff argues that the Magistrate Judge failed to reference what treatment Plaintiff received in December 2006 and erroneously examined the treatment he received for his injury over the course of three years. The Magistrate Judge, however, properly set forth the medical history of Plaintiff (a history Plaintiff outlined himself in his Amended Complaint, at ¶¶ 5-29). (ECF No. 94, 3-6, 32-34.) Further, while Plaintiff claims that the Magistrate Judge erred in finding that Plaintiff received some medical care, that fact is not in dispute: Plaintiff admits that "[t]he records show that Plaintiff was diagnosed with a ruptured distal bicep and that he received some minimal care for his injury." (Pl.'s Obj. at 10.)

The Court finds that the Magistrate Judge properly concluded that Plaintiff had received medical attention in December 2006 including an evaluation, medication, and an x-ray, but was

11

"denied any diagnostic testing in the form of an MRI and denied a referral to an orthopedic specialist for further assessment of his injury and possible surgery." (ECF No. 94, at 33.) The Sixth Circuit has held that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Put another way, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he had not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). This is "meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Id*. (citing *Estelle*, 429 U.S. at 106).

In the present action, the text relied upon by both parties did not indicate that surgery was mandated for treatment but rather established that "[n]onsurgical management is used with older patients who are sedentary and do not require normal elbow flexor strength and endurance." (ECF No. 94, at 33, quoting THE ESSENTIALS OF MUSKULOSKELETAL CARE, from the American Academy of Orthopaedic Surgeons.) Further, the text provided that nonsurgical care "may also be appropriate for the nondominant arm in selected patients and in case of delayed diagnosis." (*Id*.) The Magistrate Judge properly determined based upon the record evidence that nonsurgical intervention in 2006 was a "viable treatment option" for Plaintiff who had injured his nondominant arm at the age of fifty. In sum, the Magistrate Judge correctly concluded that a disagreement about the course of treatment Plaintiff received, *i.e.* pursuing a surgical option

12

versus nonsurgical care, cannot satisfy the objective standard of deliberate indifference.[3] *See Westlake*, 537 F.2d at 860 n. 5; *McFarland v. Austin*, 196 F. App'x 410, 411 (6th Cir. 2006).

Plaintiff's second argument, at its base, is that there is a genuine issue of material fact regarding whether Plaintiff met the criteria to be a candidate for surgical treatment.[4]  Plaintiff contends that "[t]he evidence offered in this matter would not preclude a reasonable jury from finding that Defendant's nonsurgical treatment caused Thompson's injury and that the denial of the referral ... was deliberate indifference." (Pl.s' Obj. at 11.)  Plaintiff's argument, however, is misplaced because it ignores the pertinent issue of whether the alleged policy or custom constituted deliberate indifference to a serious medical need.  As discussed *supra*, whether the treatment Plaintiff received was the best possible care or the best course of treatment is not the issue before this Court.  The law is clear that when a prisoner is provided medical treatment, the fact that he is not given the best possible medical treatment does not make the course selected

---

[3] To the extent Plaintiff relies upon Dr. Hutchinson's testimony for the position that "non-medical reasons" were used to deny authorizations, the Court finds such testimony is taken out of context.  Dr. Hutchinson explained his definition of "clearly medically necessary" and noted that if it was a "gray area" then it was "generally" not authorized "because the prisoners have to be taken physically away from the facility, it's a security hazard.  It's expensive.  And I think we won't have our political support for providing necessary care if we do things that are marginal or frivolous." (Hutchinson Dep. at 45-46.)  Dr. Hutchinson then went on to clarify how the "gray area" was relevant to making medical decisions, and cited the example of hernias where studies had shown that not all hernias needed a surgical fix as "a gray area where you would look for clearer ideas of what needs to be done versus merely [the] presence of the condition." (*Id*. at 51.)  Dr. Hutchinson further explained: "When you asked me what is – how do I define a medical necessity, I was simply trying to say that when it's not clear that it's medically necessary, when it's gray, we tend to default to not authorizing it." (*Id*. at 51.)  The Court finds that Dr. Hutchinson's testimony regarding "gray areas" does not support an inference that non-medical reasons were used to deny referrals for outside consultations.

[4] *See* Pl.'s Obj. at 12, "This information, by itself, does not show that denying Thompson surgery was the proper medical treatment."; Pl.'s Obj. at 14 "the 'accepted medical treatment' for Plaintiff should have included a surgical repair of the tendon back in December [2006]."

13

unacceptable or unconstitutional. *See Comstock*, 273 F.3d at 703 ("[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment."); *MacFarland*, 196 F. App'x at 411. Therefore, Plaintiff's argument is unavailing.

Finally, Plaintiff contends that the Magistrate Judge erred because he did not "recognize the seriousness of Plaintiff's medical injury made the need for medical care obvious even to a layperson." (Pl.'s Obj.) This argument is without merit. The Magistrate Judge set forth in the Report and Recommendation that "[t]he undersigned concluded in defendants' original motion for summary judgment that plaintiff had raised a genuine issue of material fact as to whether he had established a 'serious medical need.'" (ECF No. 94, at 30.) Additionally, because the Magistrate Judge found that Plaintiff could not evidence the "objective" second prong of the Eighth Amendment analysis, whether Plaintiff established the "subjective" first prong does not impact the Magistrate Judge's conclusion. *See Comstock*, 273 F.3d at 702-03 ("An Eighth Amendment claim has two components, one objective and one subjective.)

For all these reasons, the Court finds that the Magistrate Judge did not err in finding that Plaintiff was provided treatment that would preclude a finding of deliberate indifference.

D.   Objection 4

In his final objection, Plaintiff argues that the Magistrate Judge erred in considering whether Defendant CMS's actions met the deliberate indifference standard because Plaintiff was limited in his discovery to only the issue of whether a custom or policy existed. To this end, Plaintiff contends that per this Court's Order granting his motion for reconsideration, he was only allowed to "seek discovery as outlined in his Rule 56(d) motion," (*see* ECF No. 79, Order at 6), and his Rule 56(d) motion only mentioned pursuing discovery regarding whether Defendant had a policy or custom of denying requests for distal biceps ruptures (ECF No. 66).

14

The Court finds Plaintiff's argument unpersuasive. The Magistrate Judge found and Plaintiff admits that he did in fact engage in discovery as to the issue of deliberate indifference:

> all of plaintiff's witnesses were questioned about the injury at issue and how that injury was handled by CMS. Importantly, all of plaintiff's witnesses were questioned about the standard medical textbook, The Essentials of Musculoskeletal Care, and the witnesses testified about their experiences regarding the frequency of treating distal biceps tendons, the treatment of distal biceps tendons, and the treatment that occurred in this case. Plaintiff, did in fact take discovery on the issue of deliberate indifference, however, his evidence is simply insufficient.

(ECF No. 94, at 29 n. 3; *see* Pl.'s Obj. at 17 n. 5, "It is true that Plaintiff did engage in limited discovery as to the issue of deliberate indifference..."). Further, in Plaintiff's Rule 56(d) motion, he acknowledged the legal standard he needed to meet to prevail on his claim: "[i]n order to state a claim under Section 1983 against a local governing body, a plaintiff must allege the execution of its official policy or custom inflicted Plaintiff's injury and there is 'an affirmative link between the policy [or custom] and the particular constitutional violation alleged.'" (ECF No. 66, at 3 (citation omitted).)

Finally, this Court's August 8, 2014 Order also made clear that the Report and Recommendation was returned to the Magistrate Judge to "reconsider the motion for summary judgment as to Defendant CMS." (*Id*. at 6.) There was nothing in the Order that narrowed the scope or limited the issues allowed to be addressed by Defendant CMS in its motion for summary judgment upon the return of the Report and Recommendation to the Magistrate Judge. While the Order did reference the discovery Plaintiff had specifically requested in his Rule 56(d) motion, the Order further recognized the possibility of new facts or issues. (ECF No. 79, at 5, "the Court finds that returning the Report and Recommendation to the Magistrate Judge would not unduly prejudice Defendant CMS when it would have the ability to respond to any new facts

15

or theories proposed by Plaintiff.") Further, nothing in either of the Magistrate Judge's two orders extending the discovery deadline referenced or indicated any limitation on discovery.

Additionally, Plaintiff's argument that Defendant CMS waived any argument not memorialized in its earlier objections to the first Report and Recommendation is without merit. This Court never considered those objections and denied them as moot in its August 8, 2014 Order granting Plaintiff's motion for reconsideration. (*See* ECF No. 79, at 5.)

In summary, the Court finds that the issue of deliberate indifference was properly before the Magistrate Judge and, more importantly, Plaintiff actually did engage in discovery regarding this issue. Accordingly, Plaintiff's objection is denied.

## V. CONCLUSION

For all these reasons, the Court DENIES Plaintiff's objections (ECF No. 96); ADOPTS the Magistrate Judge's Report and Recommendation (ECF No. 94); GRANTS Defendant CMS's Motion for Summary Judgment (ECF Nos. 55, 91); DISMISSES WITH PREJUDICE Plaintiff's claims against Defendant CMS; and CLOSES this case since Defendants Dr. Keith Ivens and Dr. Brady were previously dismissed.

IT IS SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: March 21, 2016

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 21, 2016.

                                        s/Deborah Tofil
                                        Case Manager